# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-01006-MSK-BNB

JOHN STEPHEN HEANEY,

**Plaintiff,**

v.

DETECTIVE JAMES COSTIGAN,
DETECTIVE MICHAEL CORDOVA,
DETECTIVE NOEL IKEDA,
SERGEANT DANIEL STEELE,
ALL LAW ENFORCEMENT OFFICERS EMPLOYED BY THE DENVER POLICE DEPARTMENT, and
THE CITY AND COUNTY OF DENVER,

**Defendants.**

___

## PARTIES' JOINT MOTION UNDER FED. R. EVID. 702
___

The parties hereby request a determination regarding the admissibility of opinion testimony from Plaintiff's experts Roger L. Willard and Jonathan Broyles.

## INTRODUCTION

This case arises out of Plaintiff's contact with Defendant City of Denver Police Officers James Costigan, Michael Cordova, Noel Ikeda, Luke Palmatiere and Daniel Steele.  On April 4, 2008, while engaged in a sting operation targeting ticket scalpers at Coors Field, Defendant Officers Cordova and Costigan observed Plaintiff riding his bicycle through a red light.  Plaintiff hit Cordova with his bicycle as he rode past him. Cordova yelled at Plaintiff.

Plaintiff circled his bicycle around to confront Cordova. As Cordova was attempting to identify himself as a police officer, Plaintiff punched Cordova in the face, injuring Cordova's nose, knocking off his hat, and breaking his sunglasses. The officers engaged in a prolonged struggle with Plaintiff in an attempt to take him into custody. They were ultimately successful in gaining Plaintiff's compliance and placing Plaintiff in handcuffs.

A news crew nearby began video-taping the struggle some time after Plaintiff had struck Cordova and the officers had taken Plaintiff down to the ground. The video tape begins with Plaintiff on all fours on the pavement and ends with his arrest. During the struggle, Plaintiff's head is forced to ground. At the same moment as Plaintiff's head makes contact with the pavement, a sound, like that of a baseball bat contacting a ball, can be heard on the video tape. The same or similar sound can be heard on the tape on at least one other occasion during the struggle.

Plaintiff designated Roger L. Willard as his police liability expert. Plaintiff offers Mr. Willard to opine at trial that 1) the force used by officers Cordova and Costigan far exceeded that reasonable and necessary under the circumstances, 2) that both Defendant Cordova and Costigan deliberately misrepresented the facts when making official reports and providing sworn testimony in this matter, 3) that Defendant Ikeda failed to intervene when he observed Defendants Cordova and Costigan engaging in excessive force and 4) that Defendant Ikeda failed to timely report to supervisors the excessive use of force that he witnessed. (*See* Willard Reports, attached as **Exs. A, B & C**.)

Plaintiff also designated Jonathan Broyles as an expert witness. Plaintiff proffers Mr. Broyles to opine that the source of the sound heard on the video tape at the same time

2

that Plaintiff's head makes contact with the ground was that of Plaintiff's head making contact with the ground and not that of a baseball bat or any other source. (**Ex. E**.)

## LEGAL STANDARD FOR ADMITTING EXPERT OPINIONS

In order to proffer expert testimony at trial, its proponent, in this case, Plaintiff, must show, pursuant to Fed. R. Evid. 104(a) and 702, that the expert is proposing to testify to (1) specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert v. Merell Dow Pharms.*, 509 U.S. 579, 591 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The Trial Court must act as a gatekeeper and exclude from trial all unreliable expert testimony. *Daubert*, 509 U.S. at 589. The Court must ensure that the testimony of a purported expert is not only relevant, but reliable. *Id.*; *United States v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000).

The word "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. "The term applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." *Id.* "Proposed testimony must be supported by appropriate validation – i.e., good grounds based on what is known." *Id.* Where a party sufficiently calls into question the expert testimony's "factual basis, data principles, methods, or their application . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Velarde*, 214 F.3d at 1208 (quoting *Kumho*, 526 U.S. at 149).

"[W]hether an expert's testimony will assist the trier of fact to understand the evidence or to determine a fact in issue is the central issue in determining admissibility." *United States v. McSwain*, 197 F.3d 472, 482 (10th Cir. 1999) (internal quotations

omitted).   Expert testimony will assist the trier of fact only when the expert's opinion is based on sufficient facts or data. *Lantec, Inc. v. Novell, Inc.*, 306 F. 3d 1003, 1025 (10th Cir. 2002).  An expert's testimony will not assist the trier of fact and is not admissible if the process or technique the expert used in formulating the expert's opinion is unreliable. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994).

Although a trial court has great discretion in how it conducts the gatekeeper function, it may not abrogate its gatekeeper function altogether.  *See Khumo*, 526 U.S. at 158-59.   "Expert testimony should not be admitted when it is speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise render the opinion unreasonable." *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004). In other words, Rule 702 requires that the court demand more than just the expert's word, or *ipse dixit*, that something is what he says it is.  *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009).

<u>**ROGER WILLARD'S OPINIONS**</u>

**<u>Opinion 1</u>**

The force used by officers Cordova and Costigan far exceeded that reasonable and necessary under the circumstances.

**<u>Objection to Opinion 1</u>**

Mr. Willard lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies.

### 1. Mr. Willard lacks the knowledge, skill, experience, training and education to form Opinion 1.

Mr. Willard, a former police officer with the City of Thornton, has not received any formal training in the use of force for at least the last 14 years. (Roger L. Willard dep. at 16:24 – 17:2 & 19:18-24, attached as **Exhibit D**.) He has never been formally trained or certified in pressure point control techniques or Krav Magra, two commonly accepted arrest control disciplines. (Ex. D at 16:5-17.) Mr. Willard does not even know what use of force philosophy was in effect and utilized by the Denver Police Department in 2008. (Ex. D at 86:8-11.) He chose not to review Denver Police Department use of force policies in order to obtain that knowledge. (Ex. D at 20:25 – 21:7.)

Mr. Willard has never served as an instructor in any form of use of force or arrest control. (Ex. D at 18:4-6.) Nor has he ever served as a director or instructor in any capacity at any police training academy. (Ex. D at 18:7-9.) Mr. Willard has never authored or co-authored a publication regarding the use of force. (Ex. D at 17:3-5.) Nor has he authored or co-authored any publication or article regarding any topic relevant to law enforcement. (Ex. D at 17:6-8.) Mr. Willard's most recent opportunity to use force to effect an arrest himself occurred more than thirty years ago. (Ex. D at 18:10-18.) Mr. Willard's lack of training, teaching experience and application of the knowledge and skills he purports to testify about in this case make him absolutely unqualified to render an opinion as to whether the force used to effect Plaintiff's arrest was objectively reasonable or not. His lack of qualifications, in short, make him no more qualified to render an opinion in this case than does an ordinary lay person.

### 2. Mr. Willard did not obtain sufficient facts and data to render Opinion 1

Despite the existence of a mountain of evidence and testimony in this case, Mr. Willard relied only on his viewing of the video tape depicting the latter portions of Plaintiff's arrest to arrive at his conclusions. (Ex. D at 78:17-23.) He chose not to take into account the Internal Affairs interviews of any of the involved officers. (Ex. D at 52:21-25.) He failed to review Plaintiff's deposition or trial testimony at Defendant Cordova's criminal trial (based on the same incident at issue in this case). (Ex. D at 47:25 – 48:5.) Mr. Willard failed to review Defendant Steele's testimony from Cordova's criminal trial. (Ex. D at 48:13-15.) He failed to review the trial testimony of Mike O'Neill, the expert whose opinion Mr. Willard is rebutting. (Ex. D at 16-19.) In fact, Mr. Willard failed to review the trial testimony of any witness in this case. He did not even know who, if anyone, even testified at Defendant Cordova's criminal trial. (Ex. D at 53:15-17.)

Mr. Willard failed to review the personnel files of any of the involved police officer or their training records. (Ex. D at 48:23 – 49:12.) He also failed to review the testimony of the doctor who treated Defendant Cordova for the injuries Cordova suffered during the confrontation with Plaintiff. (Ex. D at 70:1-5.)

### 3. Mr. Willard did not use reliable principles or methodologies

To arrive at Opinion 1, Mr. Willard chose not to review any textbook or treatise regarding the use of force or the law regarding the use of force. (Ex. D at 57:11-15.) He consulted no Colorado or federal case law. (Ex. D at 57:11-15.) Mr. Willard admitted to not having ever read *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) (holding that events immediately connected with an arrest must be considered when

6

determining whether a use of force was reasonable). (Ex. D at 57:4-7.) Nor has Mr. Willard even ever heard of *Saucier v. Katz*, 533 U.S. 194, 205 (2001). (Ex. D at 57:8-10.) Mr. Willard also made no effort to supplement his knowledge by consulting with any experts in police defensive tactics or arrest control techniques, nor did he review any publications regarding those same topics. (Ex. D at 23:2-6.)

The reasonableness of the force used in an arrest must be judged from the perspective of a reasonable officer on the scene, recognizing that the officer may be "forced to make split-second judgments under stressful and dangerous conditions." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The evaluation must take into account the totality of circumstances, including the events leading up to the use of force. *Jiron*, 392 F.3d at 414-15. And the reasonableness of an officer's actions must be evaluated from the on-scene perspective of the officer, without the advantage of 20/20 hindsight. *Id.* at 418.

In this case, Mr. Willard admits that the only thing that colored his opinion in this case was his viewing of the videotape of the latter portion of Plaintiff's arrest. (Ex. D at 78:17-23.) He readily admits he does not know what happened prior to the commencement of the video tape when Plaintiff is seen on his hands and knees. (Ex. D at 81:24 – 82:6.) He does not know because he did not review any of the things listed above which may have given him a complete picture of how and why Plaintiff was arrested and what actions were necessary to gain Plaintiff's compliance.

He also does not know why the police officers took specific actions because he failed to review readily-available materials which would have provided him with insight as to what each officer thought was necessary under the circumstances.

7

Had Mr. Willard consulted with a textbook, treatise, or other expert in law enforcement or the use of force, Mr. Willard would have known that such knowledge is not only important, but necessary when determining whether a use of force was in violation of the Fourth Amendment, because the events leading up to the arrest must be taken into consideration when determining if the force used was objectively reasonable. *Jiron*, 392 F.3d at 418.  But he did not.  Instead, Mr. Willard based his hindsight opinions solely on the contents of the video tape, ignoring available and critical information necessary for a proper determination under the Fourth Amendment.  Accordingly, his opinions are not those which could properly assist the jury in determining a fact at issue in this case – whether the force used was reasonable.  His opinions and their support are not based upon the proper legal standard (the totality of all circumstances and the events leading up to the use of force) or factual basis.  His opinions are, instead, based solely on his *ipse dixit*, and therefore cannot assist the jury in their task of determining whether the force used was reasonable.

Even if merely viewing the video tape could be considered a proper foundation for arriving at Mr. Willard's opinions in this case, it is a task that the jury can and will undertake at trial that does not require the alleged expertise that Mr. Willard claims to bring to the table.  Therefore, even assuming Mr. Willard's opinions are reliable, they are opinions that can be made by a jury, or any other lay person, without the testimony of Mr. Willard in this case.  Accordingly, it cannot be said that Mr. Willard's testimony could assist the jury in determining whether the force used to effect Plaintiff's arrest was reasonable or whether any other officer had a duty to intervene.  See *Frase v. Henry* 444 F.2d 1228, 1231 (10th Cir. 1971) ("When the normal experiences and qualifications of

laymen jurors are sufficient form them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.").

### Opinion 2

Defendants Cordova and Costigan deliberately misrepresented the facts when making official reports and providing sworn testimony in this matter.

### Objections to Opinion 2

Mr. Willard, for the same reasons noted above, lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies. Mr. Willard, through Opinion 2, also opines on the mental state of the defendants in this case – that they acted deliberately in misrepresenting facts. Such opinion is an ultimate conclusion of law, and is inadmissible. *Specht v. Jensen*, 853 F.2d 805, 807-09 (10th Cir. 1988).

### Opinion 3

Defendant Ikeda failed to intervene when he observed Defendants Cordova and Costigan engaging in excessive force.

### Objections to Opinion 3

Mr. Willard, for the same reasons noted above, lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies.

Mr. Willard failed to apply the correct legal standard to arrive at Opinion 3. In order to have a duty to intervene, an officer must have <u>an opportunity</u> to intervene. *Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008). The video of Plaintiff's arrest makes clear that Officer Ikeda was either watching the crowd, not Plaintiff's arrest,

9

or had his back turned to Officer Cordova while trying to control Plaintiff's legs, when Mr. Willard claims that the officers used excessive force against Plaintiff. Because he could not even see what Mr. Willard claims was excessive force, Defendant Ikeda could not have had the opportunity to intervene. As such, Mr. Willard's failure to employ, or even know about, the proper legal standard when forming Opinion 3 makes his opinion inadmissible under Rule 702.

**Opinion 4**

Defendant Ikeda failed to timely report to supervisors the excessive use of force that he witnessed.

**Objections to Opinion 4**

Mr. Willard, for the same reasons noted above, lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies. Moreover, the opinion constitutes an inadmissible legal conclusion. *Specht*, 853 F.2d at 807-09.

## JONATHAN BROYLES' OPINION

**Opinion 1**

The sound heard on the video tape when Mr. Heaney's head/face is pushed into the pavement is exactly as it appears, Mr. Heaney's head/face impacting the pavement.

**Objections to Opinion 1**

Mr. Broyles did not obtain sufficient facts and data, and did not use reliable principles or methodologies.

Mr. Broyles' report fails to offer any information regarding the data or methodology relied upon to form an opinion in this case. Fed. R. Civ. P. 26(2)(B)(i)-(ii)

requires an expert to disclose his opinions along with the basis and reasoning for them, as well as the data or other information considered by the expert when forming his opinion. In his report, Mr. Broyles states only:

> After performing a preliminary aural examination of the sound portion of the Original Video, it is my determination that the sound that is heard, when Mr. Heaney's head/face is pushed into the pavement, is unique and unlike any other sound that is heard in this recording. The sound's timing with Mr. Heaney's head and the bystander's reactions make it highly probable that the sound is exactly as it appears, Mr. Heaney's head/face impacting the pavement. The sound is also unlike a baseball bat impacting a ball, referring to the fact that this took place at a baseball stadium.

(Ex. E, ¶5.)

While Mr. Broyles offers an opinion as to the source of the sound on the video tape, he offers no basis or reasoning for his opinion in which any sort of specialized knowledge, procedure, or testing was used. Instead, it appears only that he watched and listened to the video tape (i.e., a preliminary aural examination), and formed the opinion that the sound was the result of the impact of Plaintiff's head on the pavement. There is no indication that he tested the sound, analyzed the sound, or compared the sound to any others on the video tape to determine the sound's source. He merely made the same observations that any jury member or lay person could make by watching and listening to the video him or herself, thus making his opinion improper in this case. *Frase,* 444 F.2d at 1231.

If he did rely on some form of testing or analysis, Mr. Broyles failed to disclose any data from those tests or analyses which was used to form his opinion. As a result, it is impossible to duplicate or test the veracity of his opinion, as the basis for the opinion simply is not known. Mr. Broyles' opinion and report is based solely on his *ipse dixit*.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Nacchio*, 555 F.3d at 1258.

## Opinion 2

The sound heard when Plaintiff's head makes contact with the ground is unlike any other sound heard in the recording.

## Objections to Opinion 2

Mr. Broyles, for the same reasons noted above, did not obtain sufficient facts and data, and did not use reliable principles or methodologies to arrive at Opinion 2.

## TIME REQUESTED FOR HEARING

The parties anticipate that the admissibility of these five opinions can be determined in a five-hour hearing.

Respectfully submitted this 30th day of December, 2010.

    s/*Marc F. Colin*
    Marc F. Colin
    Jamie D. Wynn
    BRUNO, COLIN, JEWELL & LOWE, P.C.
    1999 Broadway, Suite 3100
    Denver, CO 80202
    Telephone: (303) 831-1099
    mcolin@bcjlpc.com; jwynn@bcjlp.com
    *Counsel for Defendant Officers*

    s/*Suzanne A. Fasing*
    Suzanne A. Fasing
    Wendy Shea
    Denver City Attorney's Office - Litigation Section
    201 West Colfax Avenue - Department 1108
    Denver, CO 80202
    Telephone: 720-913-3100
    dlefiling.litigation@ci.denver.co.us
    *Counsel for Defendants Officers and The City and*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December, 2010, I electronically filed the foregoing **PARTIES' JOINT MOTION UNDER FED. R. EVID. 702** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following E-mail addresses:

Lonn Heymann, Esq.
Lonn@rosehey.com

*s/ Julie Bozeman*
Julie Bozeman
