IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-01006-MSK-BNB

JOHN STEPHEN HEANEY,

    Plaintiff,

v.

DETECTIVE JAMES COSTIGAN,
DETECTIVE MICHAEL CORDOVA,
DETECTIVE NOEL IKEDA,
SERGEANT DANIEL STEELE, and
THE CITY AND COUNTY OF DENVER, COLORADO,

    Defendants.
_____

**JOINT MOTION UNDER FED.R.EVID. 702**
_____

    The parties, through their undersigned counsel, request a hearing pursuant to Fed.R.Evid. 702 regarding the admissibility of opinion testimony from the Plaintiff's experts, Roger L. Willard and Jonathan Broyles, and from the Defendants' experts, Michael Schott and Michael T. O'Neill.

**INTRODUCTION**

    Both sides have made good faith efforts to comply with this Court's Rule 702 Procedures. However, there remains a disagreement between the sides concerning compliance. Plaintiff objects to the Defendants incorporating argument and case citations in their objections to the Plaintiff's expert opinions. By filing this motion jointly, Plaintiff does not concede any legal arguments made by the Defendants herein, and reserves the right to address these legal arguments.

1

## Plaintiff's Challenges to Defendants' Expert Opinions

Opinion 1

    Michael Schott has viewed the video tape of the incident and is expected to make opinions about specific movements/actions Plaintiff made in the video, which he believes may indicate resistance. These opinions have been listed by Mr. Schott to include:

    RFN 0834: Attempt to sit up

    RFN 1184: Raises Head

    RFN 1217: Raises Head

    RFN1337: left Knee/leg moving forward, as waist/torso begin to rotate

    RFN 1354: Continues forward motion of left knee while raising/rotating torso and raising head

These opinions are highlighted on the processed video and communicated in still frames.

Objection to Opinion 1

    The expert did not obtain sufficient facts or data and the expert did not use reliable principles or methodologies..

Opinion 2

    With respect to the "head slam" located at RFN 1346 - RFN 1350 on the processed video, Michael Schott is expected to opine that Plaintiff's head continues to both descend and rotate to his right as Plaintiff's head moves toward the pavement.

Objection to Opinion 2

    The expert did not reliably apply the principles or methodology to the facts and data obtained.

Opinion 3

Michael Schott is expected to opine that prior to Plaintiff's head reaching direct proximity to the pavement, Plaintiff's head has rotated to his right, and if and when contact occurred with the pavement, it would have been on the left side of Heaney's face.

Objection to Opinion 3

The expert lacks knowledge, skill, training, or experience to form the opinion, the expert did not obtain sufficient facts or data, and the expert did not use reliable principles or methodologies.

Opinion 4

Michael T. O'Neill is expected to opine that the force used by Cordova and Costigan was objectively reasonable.

Objection to Opinion 4

The expert did not obtain sufficient facts or data and the expert did not reliably apply the principles or methodology to the facts and data obtained.

Opinion 5

Michael T. O'Neill is expected to opine that none of the officers on the scene of the incident failed to intervene to prevent the use of excessive force.

Objection to Opinion 5

The expert did not obtain sufficient facts or data and the expert did not reliably apply the principles or methodology to the facts and data obtained.

Opinion 6

Michael T. O'Neill is expected to opine that the officers involved acted consistently with DPD training, policies, and procedures.

Objection to Opinion 6

The expert did not obtain sufficient facts or data and the expert did not use reliable principles or methodologies.

Opinion 7

Michael T. O'Neill is expected to opine that all of the involved officers were appropriately supervised.

Objection to Opinion 7

The expert did not obtain sufficient facts or data, and the expert did not use reliable principles or methodologies.

**Defendants' Challenges to Plaintiff's Expert Opinions**

**ROGER WILLARD'S OPINIONS**

**Opinion 1**

The force used by officers Cordova and Costigan far exceeded that reasonable and necessary under the circumstances.

**Objection to Opinion 1**

Mr. Willard lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies.

1. **Mr. Willard lacks the knowledge, skill, experience, training and education to form Opinion 1.**

Mr. Willard, a former police officer with the City of Thornton, has not received any formal training in the use of force for at least the last 14 years. He has never been formally trained in pressure point control techniques or Krav Magra, two commonly accepted arrest control disciplines. Mr. Willard does not even know what use of force philosophy was in effect and utilized by the Denver Police Department in 2008. He chose not to review Denver Police Department use of force policies in order to obtain that knowledge.

Mr. Willard has never served as an instructor in any form of use of force or arrest control. Nor has he ever served as a director or instructor in any capacity at any police training academy. Mr. Willard has never authored or co-authored a publication regarding the use of force. Nor has he authored or co-authored any publication or article regarding any topic relevant to law enforcement. Mr. Willard's most recent opportunity to use force to effect an arrest himself occurred more than thirty years ago. Mr. Willard's lack of training, teaching experience and application of the knowledge and skills he purports to testify about in this case make him absolutely unqualified to render an opinion as to whether the force used to effect Plaintiff's arrest was objectively reasonable or not. His lack of qualifications, in short, make him no more qualified to render an opinion in this case than does an ordinary lay person.

2. **Mr. Willard did not obtain sufficient facts and data to render Opinion 1**

Despite the existence of a mountain of evidence and testimony in this case, Mr. Willard relied only on his viewing of the video tape depicting the latter portions of Plaintiff's arrest to arrive at his conclusions. He chose not to take into account the Internal Affairs interviews of any of the involved officers. He failed to review Plaintiff's deposition or trial testimony at Defendant

Cordova's criminal trial (based on the same incident at issue in this case). Mr. Willard failed to review Defendant Steele's testimony from Cordova's criminal trial. He failed to review the trial testimony of Mike O'Neill, the expert whose opinion Mr. Willard is rebutting. In fact, Mr. Willard failed to review the trial testimony of any witness in this case. He did not even know who, if anyone, even testified at Defendant Cordova's criminal trial.

Mr. Willard failed to review the personnel files of any of the involved police officer or their training records. He also failed to review the testimony of the doctor who treated Defendant Cordova for the injuries Cordova suffered during the confrontation with Plaintiff.

### 3. Mr. Willard did not use reliable principles or methodologies

To arrive at Opinion 1, Mr. Willard chose not to review any textbook or treatise regarding the use of force or the law regarding the use of force. He consulted no Colorado or federal case law. Mr. Willard admitted to not having ever read *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004) (holding that events immediately connected with an arrest must be considered when determining whether a use of force was reasonable). Nor has Mr. Willard even ever heard of *Saucier v. Katz*, 533 U.S. 194, 205 (2001). Mr. Willard also made no effort to supplement his knowledge by consulting with any experts in police defensive tactics or arrest control techniques, nor did he review any publications regarding those same topics.

The reasonableness of the force used in an arrest must be judged from the perspective of a reasonable officer on the scene, recognizing that the officer may be "forced to make split-second judgments under stressful and dangerous conditions." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The evaluation must take into account the totality of circumstances, including the events leading up to the use of force. *Jiron*, 392 F.3d at 414-15. And the reasonableness of

an officer's actions must be evaluated from the on-scene perspective of the officer, without the advantage of 20/20 hindsight. *Id.* at 418.

In this case, Mr. Willard admits that the only thing that colored his opinion in this case was his viewing of the videotape of the latter portion of Plaintiff's arrest. He readily admits he does not know what happened prior to the commencement of the video tape when Plaintiff is seen on his hands and knees. He does not know because he did not review any of the things listed above which may have given him a complete picture of how and why Plaintiff was arrested and what actions were necessary to gain Plaintiff's compliance.

He also does not know why the police officers took specific actions because he failed to review readily-available materials which would have provided him with insight as to what each officer thought was necessary under the circumstances.

Had Mr. Willard consulted with a textbook, treatise, or other expert in law enforcement or the use of force, Mr. Willard would have known that such knowledge is not only important, but necessary when determining whether a use of force was in violation of the Fourth Amendment, because the events leading up to the arrest must be taken into consideration when determining if the force used was objectively reasonable. *Jiron*, 392 F.3d at 418. But he did not. Instead, Mr. Willard based his hindsight opinions solely on the contents of the video tape, ignoring available and critical information necessary for a proper determination under the Fourth Amendment. Accordingly, his opinions are not those which could properly assist the jury in determining a fact at issue in this case – whether the force used was reasonable. His opinions and their support are not based upon the proper legal standard (the totality of all circumstances and the events leading up to the use of force) or factual basis. His opinions are, instead, based

solely on his *ipse dixit*, and therefore cannot assist the jury in their task of determining whether the force used was reasonable.

Even if merely viewing the video tape could be considered a proper foundation for arriving at Mr. Willard's opinions in this case, it is a task that the jury, can and will undertake at trial that does not require the alleged expertise that Mr. Willard claims to bring to the table. Therefore, even assuming Mr. Willard's opinions are reliable, they are opinions that can be made by a jury, or any other lay person, without the testimony of Mr. Willard in this case. Accordingly, it cannot be said that Mr. Willard's testimony could assist the jury in determining whether the force used to effect Plaintiff's arrest was reasonable and, therefore, whether any other officer had a duty to intervene. See *Frase v. Henry* 444 F.2d 1228, 1231 (10th Cir. 1971) ("When the normal experiences and qualifications of laymen jurors are sufficient form them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.").

**Opinion 2**

Defendants Cordova and Costigan deliberately misrepresented the facts when making official reports and providing sworn testimony in this matter.

**Objections to Opinion 2**

Mr. Willard, for the same reasons noted above, lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies. Mr. Willard, through Opinion 2, also opines on the mental state of the defendants in this case – that they acted deliberately in misrepresenting facts. Such opinion

is an ultimate conclusion of law, and is inadmissible. *Specht v. Jensen*, 853 F.2d 805, 807-09 (10th Cir. 1988).

### Opinion 3

Defendant Ikeda failed to intervene when he observed Defendants Cordova and Costigan engaging in excessive force.

### Objections to Opinion 3

Mr. Willard, for the same reasons noted above, lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies.

Mr. Willard failed to apply the correct legal standard to arrive at Opinion 3. In order to have a duty to intervene, an officer must have an opportunity to intervene. *Fogarty v. Gallegos*, 523 F.3d 1147, 1163 (10th Cir. 2008). The video of Plaintiff's arrest makes clear that Officer Ikeda was either watching the crowd, not Plaintiff's arrest, or had his back turned to Officer Cordova while trying to control Plaintiff's legs, when Mr. Willard claims that the officers used excessive force against Plaintiff. Because he could not even see what Mr. Willard claims was excessive force, he could not have had the opportunity to intervene. As such, Mr. Willard's failure to employ, or even know about, the proper legal standard when forming Opinion 3 makes his opinion inadmissible under Rule 702.

### Opinion 4

Defendant Ikeda failed to timely report to supervisors the excessive use of force that he witnessed.

**Objections to Opinion 4**

Mr. Willard, for the same reasons noted above, lacks the knowledge, skill, experience, training or education to express this opinion, did not obtain sufficient facts or data, and did not use reliable principles or methodologies. Moreover, the opinion constitutes an inadmissible legal conclusion. *Specht*, 853 F.2d at 807-09.

## JONATHAN BROYLES' OPINION

**Opinion 1**

The source of the sound heard on the video tape around the same time that Plaintiff's head makes contact with the ground was that of Plaintiff's head making contact with the ground and not that of a baseball bat or any other source.

**Objections to Opinion 1**

Mr. Boyles did not obtain sufficient facts and data, and did not use reliable principles or methodologies.

Mr. Broyles' report fails to offer any information regarding the data or methodology relied upon to form an opinion in this case. Fed. R. Civ. P. 26(2)(B)(i)-(ii) requires an expert to disclose his opinions along with the basis and reasoning for them, as well as the data or other information considered by the expert when forming his opinion. In his report, Mr. Broyles states only:

> After performing a preliminary aural examination of the sound portion of the Original Video, it is my determination that the sound that is heard, when Mr. Heaney's head/face is pushed into the pavement, is unique and unlike any other sound that is heard in this recording. The sound's timing with Mr. Heaney's head and the bystander's reactions make it highly probable that the sound is exactly as it appears, Mr. Heaney's head/face impacting the pavement. The sound is also unlike a baseball bat impacting a ball, referring to the fact that this took place at a baseball stadium.

10

While Mr. Broyles offers an opinion as to the source of the sound on the video tape, he offers no basis or reasoning for his opinion in which any sort of specialized knowledge, procedure, or testing was used. Instead, it appears only that he watched and listened to the video tape (i.e., a preliminary aural examination), and formed the opinion that the sound was the result of the impact of Plaintiff's head on the pavement. There is no indication that he tested the sound, analyzed the sound, or compared the sound to any others on the video tape to determine the sound's source. He merely made the same observations that any jury member or lay person could make by watching and listening to the video him or herself, thus making his opinion improper in this case. *Frase,* 444 F.2d at 1231.

If he did rely on some form of testing or analysis, Mr. Broyles failed to disclose any data from those tests or analyses which was used to form his opinion. As a result, it is impossible to duplicate or test the veracity of his opinion, as the basis for the opinion simply is not known. Mr. Broyles' opinion and report is based solely on his *ipse dixit*. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Nacchio*, 555 F.3d at 1258.

**Opinion 2**

The sound heard when Plaintiff's head makes contact with the ground is unlike any other sound heard in the recording.

**Objections to Opinion 2**

Mr. Boyles, for the same reasons noted above, did not obtain sufficient facts and data, and did not use reliable principles or methodologies to arrive at Opinion 2.

## TIME REQUESTED FOR HEARING

The parties anticipate that the admissibility of these opinions can be determined in an eight-hour hearing.

Respectfully submitted this 2nd day of February, 2011.

ROSENTHAL & HEYMANN, LLC

By: **s/ Raymond K. Bryant**
Raymond K. Bryant, Esq.
Rosenthal & Heymann, LLC
1391 Speer Blvd., Suite 550
Denver, Colorado 80204
Phone: (303) 825-2223
Fax:    (303) 825-2224
ATTORNEY FOR PLAINTIFF HEANEY

OFFICE OF THE CITY ATTORNEY

By: **s/ Suzanne A. Fasing**
Suzanne A. Fasing, Esq.
Wendy Shea
Assistant City Attorneys
201 West Colfax Avenue, Dept. 1108
Denver, Colorado 80202
Phone: (720) 913-3100
ATTORNEY FOR DEFENDANTS

BRUNO, COLIN, JEWELL AND LOWE, P.C.

By: **s/ Marc Colin**
Marc Colin, Esq.
1999 Broadway, Suite 3100
Denver, CO 80202
Phone: (303) 831-1099
ATTORNEY FOR ALL OFFICERS
IN THEIR INDIVIDUAL
CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February, 2011, I electronically filed the foregoing **JOINT MOTION UNDER FED.R.EVID. 702** with the Clerk of Court using the CM/ECF system, which will send notification to the following:

Jamie Dyan Wynn
jwynn@bcjlpc.com

Lonn Heymann
lonn@rosehey.com

Marc F. Colin
mcolin@bcjlpc.com

Suzanne A. Fasing
Dlefiling.litigation@ci.denver.co.us

Wendy Shea
Dlefiling.litigation@ci.denver.co.us

*s/Kathy Vargo*_____