IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01006-MSK-BNB

JOHN STEPHEN HEANEY,

        Plaintiff,

v.

DETECTIVE JAMES COSTIGAN,
DETECTIVE MICHAEL CORDOVA,
DETECTIVE NOEL IKEDA,
SERGEANT DANIEL STEELE,
ALL LAW ENFORCEMENT OFFICERS EMPLOYED BY THE DENVER POLICE
DEPARTMENT, and,
THE CITY AND COUNTY OF DENVER COLORADO,

        Defendants.

_____

OPINION AND ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT
_____

     **THIS MATTER** comes before the Court pursuant to the Defendants' Motion for

Summary Judgment **(# 75)**, Mr. Heaney's response **(# 90,** as amended **# 98)**, and the Defendants'

reply **(# 108)**; and Mr. Heaney's Motion to Seal **(# 101)** Exhibit 12 to his summary judgment

response, to which no opposition has been filed.

## FACTS

     Most of the facts in this case are in dispute.  The parties agree that, on April 4, 2008,

Defendants Costigan, Cordova, and Ikeda were Denver Police Officers, working on a plain-

clothes operation investigating ticket scalping outside Coors Field.  Passing by the ballpark, Mr.

Heaney rode his bicycle through a large crowd of pedestrians – including the Defendant police

1

officers – walking in an intersection. The parties appear to have different recollections of whether Mr. Heaney made contact with Officer Cordova, but, believing that Mr. Heaney had struck him, Mr. Cordova yelled at Mr. Heaney. Mr. Heaney stopped and turned his bike around. The parties disagree somewhat as to whether Mr. Heaney then began to approach the officers, or whether the officers then approached Mr. Heaney, but the men eventually came face-to-face and a verbal altercation ensued. The parties dispute whether, at this point in time, Officers Costigan and Cordova identified themselves as police officers. Although it is undisputed that Mr. Heaney first initiated physical contact, the parties characterize his conduct differently: Mr. Heaney contends that he attempted to "create some space" between himself and the men by "flip[ing] Mr. Cordova's baseball hat off his head" while the Defendants contend that Mr. Heaney "punch[ed] Mr. Cordova in the face," knocking his baseball cap and sunglasses off."

A full-blown physical altercation then ensued, with Officer Cordova and Officer Costigan physically taking Mr. Heaney to the ground. Again, the parties have radically differing views of what then ensued. It is sufficient to observe for purposes of this motion that Mr. Heaney alleges that Officers Cordova and Costigan "pummeled [him] with punches, kicks, and knees to the head and face" while he "offered no resistance." Officer Ikeda was present at the scene, but did not participate in physical contact with Mr. Heaney, instead acting to ensure crowd control. Mr. Heaney was eventually handcuffed and arrested. Defendant Steele, a Denver Police Officer, was not present at the scene, but later completed a Use of Force report concerning the incident.

Mr. Heaney commenced this suit pursuant to 42 U.S.C. § 1983 and he currently asserts the following claims: (i) excessive force against Officers Cordova and Costigan; (ii) malicious prosecution against all four Officers (Cordova, Costigan, Ikeda, and Steele); (iii) failure to

intercede to prevent constitutional violations against Officer Ikeda; (iv) conspiracy to violate

civil rights against all four Officers; (v) failure to train/supervise against Officers Ikeda and

Steele; (vi) a *Monell* claim against the City and County of Denver, alleging that it maintained

unconstitutional customs or policies regarding the use of excessive force by police officers and

the absence of a custom or policy prohibiting police officers from "conferring and cooperating in

making statements regarding the use of force"; (vii) common-law battery against Officers

Cordova and Costigan; (viii) common-law assault against Officers Cordova and Costigan; (ix)

common-law outrageous conduct against Officers Cordova and Steele; and (x) common-law civil

conspiracy against all four Officers.

The Defendants seek summary judgment (**# 75**) on all of the claims against them.  The

Court will address the Defendants' particular arguments as part of its analysis.

**ANALYSIS**

### A.  Standard of review

 Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment if no

trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary

adjudication is authorized when there is no genuine dispute as to any material fact and a party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what

facts are material and what issues must be determined.  It also specifies the elements that must be

proved for a given claim or defense, sets the standard of proof and identifies the party with the

burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis

Oil Co. v. Producer's Gas Co.,* 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is

"genuine" and summary judgment is precluded if the evidence presented in support of and

opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. See Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Claims**

Before the Court turns to addressing the Defendants' arguments with regard to each of the claims, it pauses to observe that the vast majority of the Defendants' motion is supported by

citations to the Defendants' own deposition testimonies, or to the opinions of the Defendants'

experts.  As noted above, the summary judgment analysis requires the Court to construe any

disputed facts in the light most favorable to the non-movant, here, Mr. Heaney.  Thus, although

the Defendants have different versions of the facts, the Court construes the evidence most

favorably to Mr. Heaney in order to favor his right to trial.

     1.  <u>Excessive force</u>

Officers Cordova and Costigan seek summary judgment on the § 1983 excessive force

claim against them.  Although they couch the motion as one invoking the doctrine of qualified

immunity, the question of whether Mr. Heaney's right to be free of the use of excessive force in

these circumstances is "clearly established" is not at issue here,[1] and thus, the Court simply

examines the evidence to ascertain whether, taken in the light most favorable to Mr. Heaney, Mr.

Heaney can prove that the officers used excessive force against him.  *Scott v. Harris*, 550 U.S.

---

[1]The Defendants make a perfunctory argument that the right at issue is not "clearly
established" because they "have found no Supreme Court or Tenth Circuit authority, and no
clearly established weight of authority from other courts which gives fair warning about the
degree of force which may be used by plainclothes police officers when making an arrest."
    In *Vlasak v. Las Vegas Metropolitan Police Dept.*, 213 Fed.Appx. 512, 514 (9th Cir.
2006) (unpublished), the court held that "whether the officers [charged with excessive force] are
entitled to qualified immunity turns on whether and when they identified themselves to Dr.
Vlasak as police officers," and that the plaintiff's recollection was that "the officers – in
plainclothes and with their badges covered – failed to identify themselves until after they
wrestled him to the floor."  The court explained that "if they had not so identified themselves,
they unnecessarily created a situation in which Dr. Vlasak understandably resisted their efforts to
subdue him, and in which their use of force was unnecessary and therefore excessive."  *Id.*
Although the Court is reluctant to declare a single case to be "weight of authority from other
circuits," the absence of any citation to circuit precedent suggesting some different rule for
plainclothes officers, coupled with the 10th Circuit's warning against cramped views of what
constitutes "clearly established law" in excessive force cases warrants a conclusion that qualified
immunity is not appropriate here.  *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th
Cir. 2007).

372, 378 (2007).

To prove a claim of excessive force under § 1983, Mr. Heaney must show that the officers' use of force against him was "objectively unreasonable" under the circumstances. *Graham v. Connor*, 490U.S. 386, 395 (1989). The reasonableness of the conduct must be adjudged from the perspective of a reasonable officer at the scene, rather than in hindsight, and the focus is on the conduct itself, not on the officer's subjective intentions, good or bad, when administering the force. *id.* at 396-97. The 10th Circuit has explained that the totality of the circumstances must be assessed, including factors such as the severity of the crime at issue, whether the victim posed a threat to the officers, and whether the victim was attempting to flee or resist arrest. *White v. Martin*, 2011 WL 2210098 (10th Cir. Jun. 8, 2011) (unpublished), *citing Graham*, 490 U.S. at 397; *Jiron v. City of Lakewood*, 392 F.3d 410, 414-15 (10th Cir. 2004).

It is important to emphasize that although the question of whether the amount of force used was reasonable is made by examining the circumstances as they appeared to the office administering the force, that does not negate the summary judgment standard's requirement that the Court construe the facts in the light most favorable to the non-movant – Mr. Heaney. Thus, whether a reasonable officer at the scene would have found the amount of force applied to be reasonable under the circumstances, the "circumstances" that reasonable officer would consider are those described by Mr. Heaney, not the Defendants.

Mr. Heaney's testimony describes a far different set of circumstances than do the Defendants. He testified that he stopped his bike in response to Defendant Cordova shouting at him. Mr. Heaney stopped "a few feet away" (in other testimony, he states it was between 6 and 10 feet), straddling his bike, and Defendants Cordova and Costigan approached him. He testified

that the officers did not initially identify themselves as police officers, but instead were "yelling invectives" to the effect of "you rotten, stupid, son of a bitch," and so on. Mr. Heaney admits that he attempted to knock Defendant Cordova's baseball hat off, in order to "get some space and ride– ride the hell out of there." He testified that he does not know whether he succeeded in knocking Defendant Cordova's hat off, as "simultaneous[ly]" with his reaching up to knock the hat off, "his partner caught me on the side of the head with a punch." Mr. Heaney was "knocked from my bike on to my hands and knees" and was "getting pretty much kicked, punched, elbowed and kneed from every direction, it seemed like." It was at about this point in time that the Defendants first revealed themselves to be police officers. He states that "I wasn't resisting when I was on my knees." (He later stated that "I was stunned and probably wasn't reacting real well, but I was – no way was I trying to resist.")[2] Mr. Heaney explains that he was pulled onto his back by someone's arm across his neck that felt like he was being choked, and eventually, he

---

[2]The Defendants offer testimony from Mr. Heaney given at a criminal trial of Officer Cordova that, they contend, constitutes an admission by Mr. Heaney that he was, in fact, resisting:

> Q: You know they're police officers. They're struggling to – and now they've got both of your hands. Why don't you just go limp and say: Okay, I'm done. Do what you want. Arrest me?
>
> A: I – I can't – I don't – honestly, can't answer that. I – I certainly didn't – wasn't looking to make the situation any harder than it already was, but I had taken enough hits to the head that I probably wasn't thinking or reacting very clearly.

The premise of the question posed – that Mr. Heaney was "struggling" and <u>not</u> "just go[ing] limp" – appears to be that of counsel, not necessarily reflecting that of Mr. Heaney's testimony prior to that point. In response to a previous question that stated "you're struggling with them, you're not prone on the ground but you are on hands and knees, they're hitting you?," Mr. Heaney responded "I'm not struggling. I've been knocked off my bike on to my hands and knees. I'm – I'm not struggling. I'm semiconscious and I'm being attacked from all sides. I'm not struggling or resisting. I'm just trying to – I'm just reacting to what's going on."

was "rolled onto my stomach" and it felt like I had two or three good-size people on top of me." He was instructed to "give us your hand," but he could not comply because his arm was pinned beneath him. He remembers that "somebody had the back of my head and was like rubbing my face into the pavement, back and forth."

Third-party witness statements offered by Mr. Heaney corroborate aspects of his testimony. Renee Herlocker, a bystander, who confirmed that "not until he was down on the ground . . . did they announce that [they were police officers] to, I think, clear away" a gathering crowd. Greg Prinkey, another witness, describes the entirety of the physical altercation, noting that "while the undercover cops had the man's hands behind his back, I saw one of the two men intentionally smash the biker's face into the pavement," and that "I never saw the man from the bike resist the undercover officers." Jason Jewett also describes the incident, noting, among other things, that "at no time did the man who was on the bike do something to resist the officers," and that "I did not hear anyone say that they were police officers until Greg Prinkney tried to break up the altercation, [at which time] one of the men yelled that he was a police officer." Mr. Jewett states that "if the officer had yelled at a similar volume before that, I believe I would have easily heard it and taken notice."

Taking these allegations as true, the Court finds that Officers Cordova and Costigan are not entitled to summary judgment on the excessive force claim. Although it is undisputed that Mr. Heaney initiated the physical confrontation, that action must be regarded in light of the evidence that he did so without knowledge that he was facing police officers. By extension, then, any physical threat that Officers Cordova and Costigan perceived from Mr. Heaney was partially exacerbated by their failure to identify themselves as police at the outset of the

encounter, which weighs accordingly on the question of whether the force they used was excessive. Moreover, once the physical altercation began and he was knocked to his hands and knees, Mr. Heaney did not offer any resistance.[3] In the absence of such resistance, the amount of force that a reasonable police officer would use in the situation greatly diminishes, yet the testimony of Mr. Heaney and the bystanders indicate that, notwithstanding apparent passivity by Mr. Heaney, officers "smashed his face into the pavement" among other things. These and other facts bearing on the question of whether the amount of force used was excessive present genuine issues of fact as to the objective reasonableness of the officers' conduct, requiring the excessive force claim to proceed to trial.

2. Malicious prosecution

Mr. Heaney asserts a claim for malicious prosecution against each of the four officers. The Court notes that Mr. Heaney has stipulated to the dismissal of a related claim of false arrest against each of the officers, making it clear that the focus of the malicious prosecution claim is not the fact that Mr. Heaney was initially arrested, but rather, the fact that the officers' actions allowed criminal charges to be brought and pursued against him. Mr. Heaney explains his theory of this claim is that the officers made "false or misleading statements in police reports and testimony under oath at the Preliminary Hearing and Motions Hearings in support of Heaney's criminal citation."

To establish a § 1983 claim for malicious prosecution, Mr. Heaney must show: (i) that each Defendant officer caused his continued prosecution; (ii) that the prosecution terminated in

_____

[3]The Court notes a seeming incongruity in Mr. Heaney's testimony – because the officers did not initially identify themselves as such

9

his favor; (iii) that there was no probable cause to support the original arrest or prosecution; (iv) each Defendant officer acted with malice; and (v) he suffered damages as a result. *McCarty v. Gilchrist,* 646 F.3d 1281, 1285 (10th Cir. 2011).

Mr. Heaney was charged with two crimes: (i) Second Degree Assault Against a Police Officer, relating to Mr. Heaney's act of attempting to "flip" Officer Cordova's baseball cap off his head; and (ii) misdemeanor Criminal Mischief,  relating to the act of knocking Officer Cordova's sunglasses off his head and damaging them.  Second Degree Assault occurs when "with intent to prevent one whom he or she knows, or should know, to be a peace officer . . . from performing a lawful duty, [a person] intentionally causes bodily injury to any person." C.R.S. § 18-3-203(1)(c).  Criminal Mischief occurs when "a person who knowingly damages the real or personal property of one or more other persons . . . where the aggregate damage to the real or personal property is less than five hundred dollars."  C.R.S. § 18-4-501(1).  As best the Court can determine, the record does not squarely indicate the process by which the charges were presented, prosecuted, and ultimately dismissed, although the parties seem to agree that both charges were terminated in Mr. Heaney's favor.  Because the analysis is slightly different with regard to the two separate criminal charges, the Court will address them separately.  *Miller v. Spiers*, 339 Fed.Appx. 862, 867-68 (10th Cir. 2009) (probable cause to pursue one charge does not prevent a claim for malicious prosecution based on simultaneous pursuit of a separate charge).

Turning first to the Second Degree Assault charge, the first question is whether Mr. Heaney has shown that the officers "caused" his prosecution.  The Court notes that "the principal player in carrying out a prosecution is not [the] police officer but [the] prosecutor."  *Calvert v.*

*Ediger*, 415 Fed.App. 80, 83 (10th Cir. 2011) (unpublished), *citing Taylor v. Meacham*, 82 F.3d 1556, 1563 n. 8 (10th Cir. 1996). Typically, prosecutorial charging decisions break any chain of causation between the actions of a police officer and the decision to prosecute. *Id.* However, officers can be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor, and the prosecutor's judgment is thereby influenced by those misstatements. *Id.*

Although Mr. Heaney has itemized an extensive litany of statements by the four officers that he contends are false, *Docket* # 90 at 31-36, only a handful of the listed facts are germane to the basis for the two criminal charges against Mr. Heaney – both charges result solely from the attempt by Mr. Heaney to "flip" Officer Cordova's baseball cap off his head. Thus, the Court limits its analysis to statements made by the officers that relate to that question.

Mr. Heaney alleges that Officers Cordova, Costigan, and Ikeda each testified falsely that Officer Cordova identified himself as a police officer before Mr. Heaney attempted to "flip" his cap. However, the evidence cited by Mr. Heaney in support of this allegation entails only one officer – Officer Cordova – testifying at Mr. Heaney's preliminary hearing that he identified himself as a police officer before Mr. Heaney's action. (The remaining citations are to third-party witnesses testifying that no such identification took place.)[4] Thus, to the extent a malicious

---

[4]In making this finding, the Court limits its analysis to page 32, paragraph (b) of Mr. Heaney's brief – the paragraph that states "Cordova, Costigan, and Ikeda falsely claim that Cordova repeatedly identified himself . . . .," and the accompanying citations. To the extent that some other evidence, cited in some other portion of Mr. Heaney's brief for some other proposition, could also be said to support this contention, the Court declines to consider it. Mr. Heaney has submitted a lengthy brief that does not fully comply with the format dictated by the Court's Practice Standards for efficient presentation of summary judgment responses, and thus, the Court is particularly unwilling to comb Mr. Heaney's brief and exhibits for evidence to support his arguments. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The Court takes the brief at face value and assumes that the citations tendered by Mr. Heaney in this paragraph are the only ones he intends to proffer in support of the paragraph's contention.

prosecution claim may lie with regard to the Second Degree Assault charge, Mr. Heaney has only come forward with facts that would demonstrate that it lies against Officer Cordova, as he has not identified any statements by any other officer that allegedly influenced the decision of the prosecutor to bring the Second Degree Assault charge.[5]  Accordingly, the remaining Defendants are entitled to summary judgment on that portion of the claim.

The question then becomes whether Officer Cordova's statement that he identified himself as a police officer prior to the physical altercation influenced the prosecutor's decision to

---

[5]Mr. Heaney has cited to testimony apparently given by Officer Costigan regarding the manner in which Mr. Heaney struck Officer Cordova at a motions hearing in Mr. Heaney's case. (The page numbering of Mr. Heaney's Exhibit 15 is inconsistent with its table of contents.  The cited testimony occurs on pages 60 and beyond of the exhibit, but the exhibit's table of contents indicates that examination of Mr. Heaney occupies all pages past page 57 of the exhibit.  The Court assumes from the content of the unidentified speaker's testimony that it is Officer Costigan describing the incident.)  Officer Costigan testified – falsely, according to Mr. Heaney – that Mr. Heaney "ball[ed] his fist" and "punched" Officer Cordova in the face.

This testimony is insufficient to give rise to a malicious prosecution claim against Officer Costigan based on the Second Degree Assault charge for several reasons.  First, there is no evidence that the prosecutor was influenced by this testimony in electing to bring or continue to pursue the Assault charge.  The testimony was given at a Motions Hearing, with regard to unspecified motions, after the charges had already been proffered, and there is no indication that Officer Costigan's testimony at that hearing influenced the prosecutor's decision to continue to press those charges.  Indeed, Officer Costigan testified, with regard to how the initial physical contact was made, "It's probably better to come from Cordova than me," suggesting that the testimony that would influence the bringing of charges would be that of Officer Cordova only.  Moreover, the Court cannot say that any misrepresentation by Officer Costigan regarding the nature of the physical contact vitiates probable cause for Second Degree Assault.  That charge requires only evidence of "bodily injury" to a police officer, and Mr. Heaney himself admits that he is unsure of whether – and to what extent – his attempt to "flip" Officer Cordova's cap resulted in him making physical contact with Officer Cordova.  Assuming the prosecutor was content with other evidence that indicated that Mr. Heaney did indeed make some kind of forceful contact with Officer Cordova, Officer Costigan's testimony that that contact took the form of a "punch," as opposed to some other character, is irrelevant to the probable cause question.

bring or to continue to pursue the Second Degree Assault charge.  The Court has significant

concern that Mr. Heaney's showing on this point is inadequate.  Mr. Heaney's brief offers only

single statement, unsupported by citation to evidence that "the above-referenced false statements

each had material impacts on the finding of probable cause, the charging and arrest of Mr.

Heaney, and the continued prosecution of Mr. Heaney." He does not offer an affidavit from the

prosecutor attesting to the fact that particular statements by Officer Cordova influenced the

decision to bring charges, much less identify <u>which</u> of those statements influenced that decision.

In short, Mr. Heaney's contention that each officer made statements that influenced the

prosecutorial decision is nothing more than a conclusion, without supporting evidence, and thus

insufficient to demonstrate a genuine issue of material fact.  *BancOklahoma Mort. Corp. v.

Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999).

   Nevertheless, the Court will infer from the fact that Officer Cordova's testimony was

given at a preliminary hearing that such testimony had some influence on the decision to

prosecute the Second Degree Assault charge.  The very purpose of a preliminary hearing is to

assess probable cause.  Thus, at least at that juncture the prosecutor relied upon Officer

Cordova's version of the events and the prosecutor presented Officer Cordova's statement as

relevant evidence.  Thus, a reasonable inference may be drawn that the allegedly false testimony

by Officer Cordova at the preliminary hearing influenced the prosecutor's decision to continue to

press the Second Degree Assault charge.

   It is undisputed that the Second Degree Assault charge was resolved in Mr. Heaney's

favor (and the Court assumes Mr. Heaney can show that being subjected to that charge caused

him compensable injuries), and thus, the last remaining element of the claim is whether Officer

Cordova gave false testimony with the requisite malice. Mr. Heaney has cited the Court to authority for the proposition that the mere fact that false statements were necessary to establish probable cause permits an inference of malice to be drawn. *Barton v. City and County of Denver*, 432 F.Supp.2d 1178, 1208 (D. Colo. 2006), *citing Montgomery Ward & Co. v. Pherson*, 272 P.2d 643, 646 (Colo. 1954). Although this Court has some doubt as to the soundness of that reasoning, it nevertheless applies it and concludes that Mr. Heaney has demonstrated a triable malicious prosecution claim against Officer Cordova only, at least as it relates to the Second Degree Assault charge.

The analysis yields different results as it relates to the Criminal Mischief charge. Mr. Heaney's contention that the officers influenced the prosecutorial decision to bring this charge by means of "false" statements is far less obvious. Mr. Heaney states that "Cordova falsely testified that his ball cap and glasses immediately fell off when his head swung back due to being punched." (It is clear that Mr. Heaney asserts this portion of the malicious prosecution claim solely against Officer Cordova, as there is no indication that any other officer gave testimony influencing the decision to charge Mr. Heaney with Criminal Mischief.) Precisely what Mr. Heaney contends is false about this statement s somewhat unclear. On the one hand, Mr. Heaney appears to take issue with the characterization of his "flip" motion as a "punch," insofar as he states "even if Cordova reacted to Heaney's reaching towards his cap, the reaction would not have been to a punch." On the other hand, Mr. Heaney may also be alleging that the falsehood is Officer Cordova's assertion that the cause of his glasses falling off (and being damaged) was Mr. Heaney's motion, as Mr. Heaney contends that "the video and other testimony describe several violent acts by Cordova himself [and thus] there are several opportunities for Cordova's hat and

glasses to have fallen to the ground or been broken due to his own unlawful conduct."

It is evident from Mr. Heaney's own testimony that he is unable to dispute Officer Cordova's contention that the glasses were knocked off as a result of Officer Cordova's reaction to Mr. Heaney's "flip." Mr. Heaney's own deposition testimony establishes that he does not know whether he made contact with Officer Cordova or not when attempting the "flip." Mr. Heaney testified that he was struck immediately and was unable to state whether his "flip" actually made contact with Officer Cordova. Thus, Mr. Heaney cannot testify conclusively that Officer Cordova's sunglasses were not dislodged as a result of his "flip," and thus, he has failed to come forward with any evidence that Officer Cordova's testimony on that point is false. At best, Mr. Heaney has merely proffered an alternative hypothesis as to how the sunglasses got dislodged. Thus, because Mr. Heaney cannot show that Officer Cordova made a false statement that induced the bringing of the Criminal Mischief charge, Officer Cordova is entitled to summary judgment on that portion of the malicious prosecution charge.

Accordingly, Officers Costigan, Ikeda, and Steele are entitled to summary judgment on the malicious prosecution claim in its entirety, and Officer Cordova is entitled to summary judgment on that portion of the claim that relates to the Criminal Mischief charge. The claim will proceed to trial against Officer Cordova only, and only with regard to the Second Degree Assault charge.

3. Failure to intercede

Officer Ikeda seeks summary judgment on the § 1983 claim against him alleging a failure to intercede to prevent a constitutional violation. A police officer has an obligation to intervene to protect persons from excessive force being imposed by another law enforcement officer in

15

their presence. *Weigel v. Broad*, 544 F.3d 1143, 1153 n. 4 (10th Cir. 2008). To prove such a claim, Mr. Heaney must show: (i) that excessive force was used against him by another; (ii) that Officer Ikeda had a realistic opportunity to intervene to prevent the harm from occurring or continuing; and (iii) that Officer Ikeda did not do so. *Id.* Whether an officer had sufficient time to intervene or was capable of preventing or stopping the harm is usually a question of fact for the jury. *Id.*

Here, the crux of Officer Ikeda's motion is that he did not observe what he considered to be excessive force being imposed. As discussed above, whether Mr. Heaney was subjected to the imposition of excessive force is a question that will proceed to trial, and thus, it is equally appropriate for the jury to consider what Officer Ikeda witnessed and what inferences he could have and should have drawn from it. Whether Officer Ikeda could have interceded, *Weigel* notes, is a question for the jury. Thus, Officer Ikeda's motion for summary judgment on this claim is denied.

### 4. Conspiracy

All four officers, as well as the City, challenge Mr. Heaney's ability to prove a claim for civil conspiracy to violate his constitutional rights. Mr. Heaney describes the scope and object of the alleged conspiracy to be the officers collaborating in order to make uniform, albeit false, statements in their reports so as to ensure that Mr. Heaney was charged with criminal conduct resulting from the incident.

A § 1983 conspiracy claim may arise when state actors agree to act in concert so as to deprive a person of a constitutional right. *See Roberson v. Pinnacol Assur.*, 98 Fed.Appx. 778, 784 (10th Cir. 2004) (unpublished). Among other things, Mr. Heaney must prove that the

Defendants reached an agreement amongst themselves, acted in concert to achieve the object of that agreement, and that the essential nature and general scope of the plan was known to each person. *Id.*

Extended discussion of this claim is not necessary. Mr. Heaney makes clear that the constitutional violation that was the object of the conspiracy was the malicious prosecution of him for Second Degree Assault and Criminal Mischief. The Court has already determined that Mr. Heaney has failed to demonstrate a genuine issue of fact as to whether any of the Defendants other than Officer Cordova committed such a constitutional violation. As to Officer Cordova, Mr. Heaney has provided nothing more than speculation to suggest that Officer Cordova agreed with others to make false statements regarding whether he promptly identified himself. Indeed, the vast majority of Mr. Heaney's allegations in this claim are either unsupported by citations to the record or consist of nothing more than speculation as to whether an agreement occurred. Accordingly, the Court finds that all of the Defendants are entitled to summary judgment on the conspiracy claim.

### 5. Failure to train/failure to supervise

Officers Steele and Ikeda and the City of Denver move for summary judgment on Mr. Heaney's claim against them for failure to train/failure to supervise. As described by Mr. Heaney's response brief, this claim appears to be based on two separate allegations: (i) an allegation that Officer Ikeda "fail[ed] to intervene as a field training officer which allowed him to exercise of [sic] control and direction over the trainees, as well as Ikeda and Steele's failure to supervise the trainees and ratification of the trainees' actions"; and (ii) an allegation that "a lack of training prohibiting the officers from conferring about what happened [when completing their

reports] is likely a moving force behind a malicious prosecution."  The Court summarily rejects any claim premised on the first contention,[6] and thus, analyzes only the second.

Although personal participation in a constitutional deprivation is normally a necessary element, and vicarious liability is not available, liability under § 1983 may nevertheless lie where a non-participant's own actions are the "moving force" behind the violation that occurred. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).  In the failure to train context, liability arises where the individual or entity has actual or constructive knowledge that its training policies are so defective that they are substantially certain to result in a constitutional violation, and the person or entity nevertheless chooses to disregard that risk of harm.  *Id. citing City of Canton v. Harris*, 489 U.S. 378, 389 (1989) *and Board of County Commissioners v. Brown*, 520 U.S. 397, 407 (1997).

Extended analysis of this claim is unnecessary.  The only arguable basis upon which Mr. Heaney alleges that the City of Denver failed to train its officers is with regard to their obligation not to collaborate when completing police reports.  Mr. Heaney argues that "when officers discuss their reports with other officers . .  it is unlikely that there will be any independent account of the use of force by the officers."  Thus, "a lack of training prohibiting the officers from conferring about what happened is likely a moving force behind a malicious prosecution in violation of Plaintiff's rights."  Mr. Heaney offers no citations whatsoever to evidence supporting this and other propositions urged with regard to the failure to train/failure to

---

[6]To the extent the Court can form any understanding of this claim, it appears to duplicate the failure to intercede claim against Officer Ikeda.  The basis upon which Mr. Heaney alleges that Officer Steele, an individual whom it is undisputed was not present at the scene, "failed to supervise" or "ratified" the actions of Officers Cordova and Costigan, is not elaborated upon in the brief.

supervise claim.  In the absence of such citations, Mr. Heaney has offered nothing more than conclusions, which are insufficient to carry his burden on summary judgment.  Accordingly, Officers Steele and Ikeda, as well as the City of Denver, are entitled to summary judgment on the failure to train/failure to supervise claim.

### 6. *Monell* claim regarding excessive force

The City of Denver seeks summary judgment on the *Monell* claim asserted against it.  In this claim, Mr. Heaney alleges that the City maintains a custom or policy permitting the use of excessive force by its police officers.

To establish such a claim, Mr. Heaney must show: (i) that officers used excessive force against him; (ii) that the use of force arose under circumstances that constituted a usual and recurring situation with which police officers must deal; (iii) that an officer's inadequate training, supervision, or discipline demonstrated a deliberate indifference on the part of the City toward persons with whom police officers come into contact; and (iv) there is a direct causal link between the excessive force used against Mr. Heaney and the City's inadequate training.  *Allen v. Muskogee*, 119 F.3d 837, 841-42 (10th Cir. 1997).

For the same reasons that the Court granted summary judgment to the City on the failure to train/failure to supervise claim, it is entitled to summary judgment on this claim as well.  Mr. Heaney alleges that the City's "pain compliance policy" permits police officers to use "pain compliance techniques," such as closed-fist and baton strikes, when an individual demonstrates relatively minor forms of resistance, such as verbal non-compliance or passive resistance.  Mr. Heaney goes on to reach several conclusions regarding this policy – *i.e.* that "a lower level of force such as command presence, pressure points, or leverage techniques [can] be useful in

appropriately and proportionately responding to a subject expressing the types of resistance listed above," that the policy "encourages officers to use force if they perceive that someone is merely in a prone position, or failing to abide by commands such as to give the officers an arm even while it is pinned underneath him," and that the City's policy "leads to exactly the kind of results that are plainly obvious – where officers are likely to use excessive force even though it is not required or authorized by the constitution" – for which no citation to supporting factual evidence is offered.

Mr. Heaney seems to believe that simply proffering the City's policy, coupled with evidence as to what happened to him, is enough to prove that the City was "deliberately indifferent" to a "substantial certainty" that its policy would produce unconstitutional behavior. He offers nothing to describe what the source of the tendered 1½-page "policy" is – it quite obviously is one small and fairly superficial section of a larger, unidentified document – nor offer any evidence regarding how police officers are actually trained to apply the policy.  Simply tendering some portion of some unknown document is insufficient to demonstrate a genuine dispute of fact with regard to such material issues as the actual training that Denver Police Officers receive in the application of pain compliance, the degree to which that training is consistent with general notions of good police practice, and the circumstances under which it became "substantially certain" that defects in the training would lead to constitutional violations. Accordingly, the City of Denver is entitled to summary judgment on the *Monell* claim alleging that failures in training and policies led to the application of excessive force.

### 7. Battery, assault, and outrageous conduct

Finally, the officers seek summary judgment on Mr. Heaney's common-law battery,

assault, and outrageous conduct claims against them. They contend that Mr. Heaney's allegations fail to allege a colorable claim for each tort, and further argue that, as public employees, they are entitled to immunity from tort claims under the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.* (although they acknowledge that such immunity does not shield them from tort liability for "willful and wanton" conduct). Although Mr. Heaney's response brief inexplicably does not address these contentions, the evidence viewed in the light most favorable to Mr. Heaney would support the elements of each tort claim and would be sufficiently "willful and wanton" so as to overcome general governmental immunity. Accordingly, the Defendants are not entitled to summary judgment on these tort claims.

8.  Claim against "all law enforcement officers"

Mr. Heaney's complaint named, as a Defendant, "all law enforcement officers employed by the Denver Police Department." It is not clear what claim Mr. Heaney believes he can assert against every member of the Police Department, but in any event, he has not responded to that portion of the Defendants' motion that seeks judgment on behalf of this "Defendant," and the Court agrees that this "Defendant" should be stricken from the caption.

**C.  Motion to Seal**

Finally, the Court turns to Mr. Heaney's Motion to Seal **(# 101)**. The motion seeks to seal Exhibit 12 to Mr. Heaney's response brief. That exhibit is the 1½-page "pain compliance policy" discussed above.

Mr. Heaney offers two arguments for sealing the document: (i) that it was tendered by the Defendants subject to a "confidential" designation, adopted in a stipulated Protective Order by the Magistrate Judge; and (ii) the Defendants represent that "it describes how officers are trained

21

in defense tactics and arrest control" and that if disclosed to the public "it may allow suspects to prepare for and defend against, avoid, or respond to the techniques and strategies of the Denver Police."

As to the former contention, D.C. Colo. L. Civ. R. 7.2(b) provides that "a stipulated protective order or a confidentiality agreement executed by the parties, standing alone, will not suffice for sealing." As to the latter contention, the Court notes that the Defendants did not themselves file a motion to seal the document, as contemplated by Local Rule 7.2(b), and thus, the Court evaluates the appropriateness of sealing solely on the representations made by Mr. Heaney. The Court finds the concerns articulated to be ephemeral and insufficient to overcome the strong public interest in access to those documents that have been presented to the Court for adjudication and which the Court has considered in reaching its conclusions. *See United States v. McVeigh*, 119 F.3d 806, 811-14 (10th Cir. 1997). The notion that criminal suspects will somehow be prepared to "defend against, avoid, or respond to" the information disclosed in the tendered policy ignores the fact that the "policy" itself is so generalized and superficial as to be meaningless. It literally discloses nothing more than the fact that there are several general means of inducing pain ("chemical agent," "strikes to the subject's body," "using pressure to parts of the suspect's body"); that clear instructions should be given when pain techniques are administered because the suspect's focus is usually on the pain he or she is experiencing; that pain techniques should be de-escalated as soon as compliance is obtained; and that there are several general types of resistance that subjects can offer, such as verbal non-compliance, passive resistance, active aggression, and psychological intimidation. The document reveals nothing meaningful about specific police policies and tactics; indeed, any layperson could

readily intuit the contents of the document with only a minimal amount of thought.

Accordingly, the motion to seal is denied and Docket # 92 shall be unsealed.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (**# 75**) is **GRANTED IN PART**, insofar as Officers Ikeda, Costigan, and Steele are entitled to judgment in their favor on the malicious prosecution claim against them in its entirety, and Officer Cordova is entitled to judgment on that claim insofar as it relates to the Criminal Mischief charge; all Defendants are entitled to judgment in their favor on the conspiracy claims under both § 1983 and common-law; Defendants Ikeda, Steele, and the City are entitled to judgment on the failure to train/failure to supervise claim; and **DENIED IN PART**, insofar as there are genuine disputes of material fact regarding the excessive force claim against Defendants Cordova and Costigan, the failure to intercede claim against Defendant Ikeda, the malicious prosecution claim against Defendant Cordova with regard to the charge of Second Degree Assault, and the tort claims against the four officer Defendants.   The caption of the case is **AMENDED** to omit the reference to "all law enforcement officers . . . ."  The Motion to Seal (**# 101**) is **DENIED**, and the Clerk of the Court shall unseal Docket # 92.

Because there are claims that are proceeding to trial, the parties shall appear for a Pretrial Conference on **Wednesday, November 30, 2011** at **4:00 p.m.**  The parties shall review and prepare for that Conference in accordance with the previously-issued Trial Preparation Order (**#27**).  The parties shall be prepared to set the case for trial within approximately 30-90 days of

the date of the Conference.

Dated this 16th day of September, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge